# United States District Court
# Central District of California

| | |
|---|---|
| BERTHA CAMPOS,<br><br>               Plaintiff,<br>    v.<br>RELIANCE STANDARD LIFE INSURANCE COMPANY; WHM, LLC; and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case № 2:15-cv-08304-ODW (GJSx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

      This is an action under the Employee Retirement Income Security Act to recover long-term disability benefits. On October 17, 2016, the parties lodged the record of the underlying administrative proceeding with the Court. On April 10, 2017, the Court conducted a bench trial, after which the Court took the matter under submission. Based on the Administrative Record, the briefs submitted by the parties, and the argument of counsel at the trial of this matter, the Court issues the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

    1.    On or about May 5, 2008, Defendant WHM, LLC ("WHM") hired Plaintiff Bertha Campos as a full-time employee.

2. Defendant Reliance Standard Life Insurance Company ("Reliance") issued a group long-term disability policy, policy number VPL 300459 (the "LTD Plan"), to WHM.

3. At all relevant times during Plaintiff's employment with WHM, Plaintiff was enrolled in the LTD Plan.

4. The LTD Plan terms provide that "[a] person is eligible for insurance under this Policy if he/she: (1) is a member of an Eligible Class . . .; and (2) has completed the Waiting Period . . ."

5. The LTD Plan terms define "Eligible Class[]" as follows: "Each active, Full-time Employee earning an annual salary of at least $15,000 except any person employed on a temporary or seasonal basis."

6. The LTD Plan terms define "actively at work" and "active at work" as follows: "'Actively at Work' and 'Active Work' mean actually performing on a Full-time basis the material duties pertaining to his/her job in the place where[,] and the manner in which[,] the job is normally performed. This includes approved time off such as vacation, jury duty and funeral leave, but does not include time off as a result of an Injury or Sickness."

7. The LTD Plan terms define "full-time" as follows: "'Full-time' means working for you for a minimum of 30 hours during a person's regular work week."

8. The LTD Plan terms do not expressly define "regular work week."

9. On April 11, 2013, Plaintiff was working as a banquet server for WHM when she fell and injured herself.

10. On November 21, 2013, Plaintiff submitted to Reliance a claim for benefits under the LTD Plan.

11. On April 7, 2014, Reliance sent a letter to Plaintiff that appeared to deny Plaintiff's claim. The letter did not explicitly state that Reliance denied her claim, but it cited language from the LTD Plan terms regarding the full-time requirement for coverage. The letter then stated: "We regret our decision could not be more favorable.

Our determination has been based on the information contained in your file and the policy provisions applicable to your claim."

12. On April 9, 2014, Plaintiff called Reliance to inquire about the status of her claim, at which time a Reliance representative informed Plaintiff that Reliance had denied her claim. According to Reliance's written notes from the call, Reliance advised Plaintiff that her "claim [was] not denied due to medical not supporting [*sic*], just due to not meeting [full time] hours policy definition."

13. On September 17, 2014, Plaintiff appealed the denial of her claim.

14. On January 13, 2015, Reliance sent a letter to Plaintiff denying her appeal. Reliance stated in the letter that it had reviewed Plaintiff's payroll information for the eight pay periods (16 weeks) preceding Plaintiff's accident. Reliance included the following table regarding the amount of time Plaintiff worked during those pay periods:

| **Period Ending** | **Hours Worked** | **Total Hours** |
|---|---|---|
| 12/26/2012 | 30.5 Regular time; 8 Vacation hours | 38.50 |
| 1/9/2013 | 23 Regular time; 8 Vacation hours | 31 |
| **1/23/2013** | **61 Regular time; 16 Vacation hours[1]** | **77** |
| 2/6/2013 | 49 Regular time | 49 |
| **2/20/2013** | **68.75 Regular time** | **68.75** |
| 3/6/2013 | 49.75 Regular time | 49.75 |
| **3/20/2013** | **72.50 Regular time** | **72.50** |
| 4/3/2013 | 33 Regular time; 24 Vacation hours | 57 |

15. Reliance stated in its January 13 letter that during those eight pay-

---

[1] Although Reliance stated that eight of these hours were "sick" hours, this appears to be a typo. The record discloses that the 8 "sick" hours were actually "vacation" hours, and Reliance included it in the total eligible hours in the third column.

periods, Plaintiff "infrequently worked over 30 hours per week," and that she "only worked 'full-time' as defined by your Policy, during three (3) pay periods."

16. Reliance's January 13 letter further stated: "[W]hile we understand that you were considered a full-time employee for purposes of certain benefits only available to full-time employees, the Policy has a specific definition of 'Full-time' which must be satisfied in order for your LTD claim to have been approved. We further understand that you paid premiums for this benefit, and this decision does not imply that you are never eligible for LTD benefits. However, for this particular claim, you did not work sufficient hours during the many weeks leading up to the date you became injured, on April 11, 2013, in order for your claim to be approved."

17. Plaintiff worked an average of 31 hours per week during the six pay periods preceding her accident.

18. In a letter to Reliance dated June 23, 2015, Plaintiff stated in part: "Prior to and during my employment your company continued to deduct monies for monthly policy coverage fully aware my employer was not providing me with the minimal 30 hours per week, but was giving these hours to other non-full time employees."

19. Reliance argues that the LTD Plan has a 180-day Elimination Period during which no benefit is payable.

20. Reliance argues that the LTD Plan terms contain a "Regular Occupation" and an "Any Occupation" definition of "Total Disability."

21. Reliance argues that during the "Regular Occupation" period, the LTD Plan terms provide, in part: "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness: (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the substantial and material duties of his/her Regular Occupation."

22. Reliance argues that the LTD Plan terms define "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national

economy, and not the unique duties performed for a specific employer or in a specific locale."

23. Reliance argues that with regard to the "Any Occupation" period, the LTD Plan terms provides: "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness: . . . (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis."

24. Reliance argues that the LTD Plan terms define "Any Occupation" as "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training or experience."

25. Reliance argues that the LTD Plan terms include a 24-month pay limitation for certain Total Disabilities "caused by or contributed to [by] musculoskeletal and connective tissue disorders of the neck and back."

26. The only basis on which Reliance denied Plaintiff's claim is that Plaintiff did not work a minimum of 30 hours in a "regular work week" as required by the LTD Plan terms.

27. WHM provided payroll information to Reliance so that Reliance could determine whether Plaintiff was a full time employee under the LTD Plan. However, WHM was not otherwise involved in determining Plaintiff's eligibility for benefits under the LTD Plan.

## II. CONCLUSIONS OF LAW

1. Under the Employee Retirement Income Security Act ("ERISA"), a participant in an ERISA-governed welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

2. "A denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties to this action have stipulated, and the Court has ordered, that Reliance's denial of Plaintiff's claim shall be reviewed *de novo*. (ECF Nos. 26–27.)

3. Under a *de novo* standard of review, the Court interprets the terms of an ERISA-governed benefit plan "in an ordinary and popular sense as would a person of average intelligence and experience." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (internal brackets and quotation marks omitted). However, "[a]mbiguities in the Plan are to be resolved in [the participant's] favor." *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993) (citing *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 537 (9th Cir. 1990)).

4. Despite Reliance's argument to the contrary, there is ambiguity in how to determine a "regular work week" under the LTD Plan. The LTD Plan terms do not expressly define what constitutes a "regular work week." Moreover, the dictionary definition of the word "regular" is of no help in determining a method for calculating a regular work week. *See Regular*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/regular (last visited April 10, 2017) (defining "regular" in part as "recurring, attending, or functioning at fixed, uniform, or normal intervals"). Reliance's decision to look at the preceding eight pay periods to determine Plaintiff's "regular work week" is, at best, only one of several permissible ways to determine a "regular work week."

5. Because the term "regular work week" is ambiguous, and because ambiguities must be construed where possible in favor of coverage, the Court will consider Plaintiff to have met the full-time requirement if she can provide a reasonable calculation method that establishes that she worked in excess of 30 hours in a "regular work week" prior to her injury.

6. Plaintiff points out that she worked an average of 31 hours per week over the six pay periods before her accident. The Court concludes that averaging the number of hours worked over a particular period reasonably reflects the number of hours that an employee "regularly" works. Indeed, because Plaintiff had a widely-varying work schedule work (due to the fact that her work was event-based), the average is likely a *more* accurate reflection of Plaintiff's "regular" work week than doing a week-to-week comparison of hours worked. The Court also concludes that six pay periods (as opposed to eight) is a large enough sample size to reasonably reflect what her "regular work week" was prior to the injury. Finally, this calculation method does not contradict any explicit terms of the LTD Plan. Thus, based on Plaintiff's calculation, the Court concludes that Plaintiff worked "a minimum of 30 hours during [her] regular work week" as defined by the LTD Plan.

7. Reliance repeatedly points to Plaintiff's complaint following the denial of her appeal that "[her] employer was not providing [her] with the minimal 30 hours per week." This statement does not compel a different result. First, Plaintiff's statement, when read in context, is not a concession that Reliance correctly concluded that she is not a full-time employee under the LTD Plan. Rather, Plaintiff is simply pointing out that she was unable to work more hours than she had because WHM did not schedule her for more work. Second, her statement does not change the number of hours she actually worked before her accident; indeed, the dispositive question—which is solely a legal question—is whether the hours she worked renders her a full-time employee under the LTD Plan. And as Reliance does not make any estoppel or waiver argument based on Plaintiff's statement, it does not affect the Court's analysis regarding whether or not the hours that she worked qualify her as a full-time employee under the LTD Plan.

8. Reliance also argues that Plaintiff is not entitled to benefits for several additional reasons. First, Reliance argues that Plaintiff was not entitled to any benefits during the Elimination Period and 24-month "Regular Occupation" period because she

could still perform her "regular occupation" following her accident. However, despite the fact that this defense was available to Reliance at the time of both Plaintiff's initial claim and at the time of Plaintiff's appeal, Reliance did not base its denial of her claim on this issue. It is well established in the Ninth Circuit that the failure to assert a defense to coverage during the administrative proceeding is a bar to raising that defense during the subsequent civil action. *See, e.g., Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010); *Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 720 (9th Cir. 2012). The Court therefore rejects this argument.

9. Second, Reliance argues that Plaintiff is not entitled to benefits during the "Any Occupation" period. Because Plaintiff's claim was denied before the "Any Occupation" period commenced, Reliance could not have made any determination as to this issue during the administrative process. Thus, the Court concludes that Reliance did not waive this argument by not asserting it. The Court therefore remands the matter to the plan administrator to make an initial determination on this issue.

10. Reliance also argues that the Court should remand the matter to the plan administrator to determine whether the 24-month pay limitation for musculoskeletal and connective tissue disorders applies to Plaintiff's injury. Again, because Plaintiff's claims were denied before the 24-month pay limitation would have kicked in, this issue was not ripe for determination during the administrative process. Thus, the Court concludes that Reliance did not waive this argument by not asserting it. The Court therefore remands the matter to the plan administrator to make an initial determination on this issue.

11. A party is generally not a proper defendant to an action under 29 U.S.C. § 1132(a)(1)(B) where "it had nothing to do with denying [the claimant's] claim for increased benefits" and is not responsible for paying benefits. *See Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011).

12. Here, Plaintiff pursues two alternative theories as to why the Reliance's

decision was wrong. First, Plaintiff argues she is a "full time" employee under the LTD Plan because she worked an average of 31 hours per week in the six weeks preceding her accident. Second, she argues that because Plaintiff paid premiums for the LTD Plan while she was employed by WHM, Defendants either waived or are estopped from asserting the argument that Plaintiff is ineligible for benefits. With respect to the first theory of liability, WHM is not a proper defendant because WHM had no involvement in determining whether the hours Plaintiff worked qualified her for benefits under the LTD Plan terms (and because WHM is not responsible for paying benefits). While it is a closer question whether WHM is a proper defendant under the second theory, that theory is moot in light of the Court's ruling. The Court therefore concludes that dismissal of Plaintiff's claims against WHM is appropriate.

### III.   CONCLUSION

For the reasons discussed above, the Court concludes as follows:

1. Plaintiff worked "a minimum of 30 hours during [her] regular work week" as defined by the LTD Plan;

2. Reliance waived any argument that Plaintiff was not entitled to benefits because she did not meet the definition of "Totally Disabled" during the "Regular Occupation" period;

3. Remand to the Plan administrator is appropriate for a determination whether Plaintiff was totally disabled under the "Any Occupation" period, whether the 24-month pay limitation for musculoskeletal and connective tissue disorders applies to Plaintiff's injury, and to make other determinations as necessary that are not inconsistent with this decision;

4. WHM should be dismissed from this lawsuit without prejudice.

/ / /
/ / /
/ / /
/ / /

The Court **ORDERS** the parties to submit a proposed judgment to the Court within seven days of the date of this Order.

**IT IS SO ORDERED.**

April 12, 2017

                                                _____
                                                    **OTIS D. WRIGHT, II**
                                          **UNITED STATES DISTRICT JUDGE**